**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Ft. Lauderdale Division**

PATRICIA CHARLEY,

Plaintiff,

vs.

NATERA, INC., a California Corporation,

Defendant.

CASE NO: 0:26-cv-62009

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, PATRICIA CHARLEY ("Mrs. Charley/Plaintiff"), by and through the undersigned counsel, sues the Defendant, NATERA, INC. ("Natera/Defendant"), and alleges:

**INTRODUCTION**

Mrs. Charley was among the earliest employees responsible for building Defendant Natera, Inc.'s oncology commercial business. As the first oncology sales representative hired for Natera's oncology commercial organization, she secured the company's first commercial oncology assay, laying the foundation for what became a highly successful oncology commercial division. Throughout her employment, Mrs. Charley played a significant role in the growth and success of Natera's oncology products and the sales team's professional development, consistently delivering exceptional sales performance and earning multiple President's Club and other high-honor awards in recognition of her outstanding achievements.

Despite her performance and contributions, Mrs. Charley repeatedly reported conduct that she reasonably believed violated Federal and State employment laws, healthcare regulations, and public policy. Throughout her employment, Patricia raised concerns regarding what she


**Stephan Lopez Law Firm, LLC.**
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

reasonably believed were violations of the Health Insurance Portability and Accountability Act ("HIPAA"), the Physician Self-Referral Law (the "Stark Law"), the Federal Anti-Kickback Statute, and other healthcare compliance requirements. She documented numerous incidents and reported her concerns through Natera's Human Resources department and other internal reporting channels. Rather than adequately investigating or remedying those concerns, Natera failed to take appropriate corrective action and permitted the discriminatory, retaliatory, and hostile work conduct to continue, materially altering the terms and conditions of Mrs. Charley's employment.

The allegations set forth in this Complaint are based upon Mrs. Charley's personal knowledge, contemporaneous documentation, communications, employment records, and other evidence obtained through investigation. As a result of Natera's unlawful conduct, Mrs. Charley has suffered substantial economic, professional, and emotional.

## JURISDICTION AND VENUE

1. This action is for damages arising from discrimination under Title VII of the Federal Civil Rights Act, which exceeds $75,000.00, exclusive of attorney’s fees and costs.
2. Venue is proper in the United States District Court for the Southern District of Florida because the unlawful employment practices alleged herein were committed within this District, including in Miami-Dade and Broward Counties, Florida.
3. The Court has subject matter jurisdiction over this action, which presents Federal claims conferred by 28 U.S.C. §§ 1331 and 1343(a).
4. Plaintiff is subject to personal jurisdiction of this Court for the purposes of this action.
5. Defendant is subject to personal jurisdiction of this Court for the purposes of this action.

## PARTIES

6. Plaintiff, Mrs. Charley, is a Honduran national of Hispanic ethnicity and, at all times relevant to this Complaint, an employee of Natera within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).
7. Mrs. Charley was primarily assigned to work in the State of Florida where she resides.
8. At all times
9. Upon all information and belief, Defendant, Natera, is incorporated in Delaware, with a principal place of business in San Mateo County, San Carlos California and Austin, Texas.

## GENERAL ALLEGATIONS

10. On or about March 2019, Mrs. Charley entered into an employment contract with Natera.
11. Mrs. Charley officially began her employment on April 8, 2019, and remains employed with Natera at this time.
12. During the time of Mrs. Charley's employment, Natera and its employees have engaged in both discriminatory and retaliatory patterns of conduct against her.
13. Mrs. Charley filed a discrimination charge against Natera with the EEOC
14. Natera responded to the charge of discrimination by manufacturing a pretextual non-discriminatory reason for its conduct towards Mrs. Charley.
15. On April 23, 2026, Mrs. Charley obtained a *Right to Sue' Letter is attached hereto as* ***Exhibit A***.

### I. DISCRIMINATORY REMARKS AND DISPARATE TREATMENT BASED ON NATIONAL ORIGIN

16. In 2019, Dustin Greenwell ("Greenwell"), Natera Regional Director, directed Mrs. Charley during a Zoom call to accept the Miami territory, rather than the Broward County


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

territory in which she resided, stating in substance that Miami was where "her people" were, a reference to Mrs. Charley's Hispanic ethnicity and Honduran national origin.

17. Greenwell made discriminatory remarks about Hispanic candidates for leadership positions, including applicants Xiomara Pratts and Joe Fuentes, stating that he would not hire Hispanic individuals seeking leadership roles within the company.

18. Xiomara Pratts confronted Greenwell about his discriminatory conduct during a professional conference, in the presence of various physicians and colleagues.

19. Following an interview involving Joe Fuentes, Greenwell told Mrs. Charley, in substance, that he would never hire Fuentes because Fuentes is Hispanic and Greenwell believed Fuentes needed to "know his place."

20. Greenwell reprimanded Mrs. Charley for using her Master of Science credential in her professional title, stating in substance that because Mrs. Charley is Honduran it did not matter, and referencing his Honduran nanny to convey that, regardless of education, individuals of Honduran descent such as Mrs. Charley would never be promoted into management.

21. During Mrs. Charley's interview for the Regional Director position, which was attended by the Vice President of Sales, David Basher ("Basher"), and East Area Director Amy MacAlintal ("MacAlintal") in addition to Greenwell, Greenwell made discriminatory remarks that Mrs. Charley is informed and believes set the tone for a subsequent plan to demote her.

22. MacAlintal, both while Mrs. Charley served as District Manager and later as Regional Director, treated Mrs. Charley differently from her similarly situated non-Hispanic counterparts, including failing to return Mrs. Charley's calls, repeatedly overriding or


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

second-guessing Mrs. Charley's business decisions while permitting other Regional Directors autonomy over decisions within their own regions, and consistently siding against Mrs. Charley in favor of non-Hispanic, white American colleagues.

23. During a recorded Zoom year-end evaluation, in the presence of Human Resources personnel, MacAlintal remarked that she did not "relate" to Mrs. Charley, citing Mrs. Charley's Honduran background. A recording of this statement exists.

24. MacAlintal repeatedly sided with District Manager Tiffany Heneks ("Heneks"), a white American colleague substantially younger than Mrs. Charley, over Mrs. Charley's own regional decisions, as documented in emails and text messages.

25. MacAlintal removed high-performing territories from Mrs. Charley's supervision and reassigned them to Heneks, including the East Lauderdale territory, which Mrs. Charley had been asked to improve and did, only to have it transferred from her against her objections.

## II. THE CREATION OF A PRETEXTUAL POSITION AND SCHEME TO REPLACE MRS. CHARLEY

26. In or around April 2024, Kelly Shultz ("Shultz"), West Area Director, and Regional Director Alicia Piazza-Coffey ("Piazza-Coffey"), separately warned Mrs. Charley in the presence of Lisa Roman and Melinda Clark, that Mrs. Charley was being targeted for discrimination on the basis of her ethnicity and age, and that a second District Manager position was being fabricated as a mechanism to install Heneks in Mrs. Charley's role.

27. Shultz advised Mrs. Charley to report the matter directly to Human Resources and to avoid mentioning it to Basher, whom Shultz identified as involved in the scheme.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

28. Basher approved the creation of a temporary second District Manager position, which was used to hire Heneks and was abolished shortly after her hire.

29. Basher thereafter approved the hiring of Heneks into Mrs. Charley's Regional Director position after Mrs. Charley had repeatedly notified Basher and Human Resources representative Karie Lau ("Lau") of the discriminatory conduct described herein.

30. Heneks was hired and promoted in violation of Natera's own internal standard operating procedures, including placement in management and leadership training programs without satisfying the minimum tenure and performance requirements set forth in those procedures, and despite lacking the qualifications set forth in the applicable job posting.

31. Following Mrs. Charley's demotion, Basher told her she would never be considered for a management position at Natera.

32. Joe Johnson ("Johnson"), a Natera employee who reported to Mrs. Charley, met with Greenwell in Puerto Rico to discuss next steps in connection with Mrs. Charley's removal, and was subsequently hired as District Manager for the Greater Miami District following Heneks' promotion.

## III. COORDINATED EFFORTS TO ATTEMPT TO SECURE MRS. CHARLEY'S TERMINATION BEFORE AND DURING THE HR INVESTIGATION

33. In January 2025, during the Global Sales Meeting, Medical Science Liaison Nicole Scott ("Scott") and MacAlintal created a baseless narrative that Scott was relocating to Tennessee because of shortcomings by Mrs. Charley. This was shared with Mrs. Charley's entire team.

34. Before and during the HR investigation, MacAlintal, Greenwell, Heneks, and Johnson colluded with Mrs. Charley's team to produce fabricated depositions to HR personnel.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

35. Mario Coppo ("Coppo"), Clinical Oncology Specialist, further instigated other colleagues to provide negative statements about Mrs. Charley during Human Resources investigative interviews to secure her termination, and separately told Mrs. Charley, in front of a colleague at an industry conference, that her role had been reduced to working for him.

36. Coppo was the subject of a Human Resources investigation for conduct towards Suade Jooma (Oncology Territory Manager), which Natera's own investigator characterized in writing as a "fireable offense," yet Coppo was retained and later had that disciplinary record removed.

37. Kristin del Valle (Clinical Oncology Specialist) was contacted by Coppo and coached regarding what to say to Human Resources about Mrs. Charley during the investigation.

**IV. MRS. CHARLEY'S COMPLAINTS OF DISCRIMINATION AND COERCION IN WHICH NATERA FAILED TO ACT**

38. Immediately after being warned by Shultz and Piazza-Coffey, Mrs. Charley complained to Basher regarding the discriminatory conduct described above. Basher ignored the complaint and reacted with anger to Mrs. Charley's assertion that she was being treated unfairly.

39. Mrs. Charley repeatedly reported the discriminatory conduct described herein to Lau. This was supported by a Zoom call with Basher.

40. Natera, through Basher and MacAlintal, was made aware of discriminatory and hostile conduct directed at Mrs. Charley and other employees and failed to meaningfully investigate or remediate it; instead, it concealed complaints raised by other members of leadership.

41. Natera, through Lau, terminated Mrs. Charley's position without first conducting a proper investigation into any of Mrs. Charley's complaints of discrimination, none of which were ever carried through a proper investigative process.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

42. Lau impeded Mrs. Charley's efforts to reach Natera's Compliance department to report an attempt to coerce Mrs. Charley into signing a physician valuation "Attestation Form" implicating the Stark Law, as further described below.

43. Mrs. Charley was pressured to sign an Attestation Form purporting to adjust the compensation value of physicians for purposes of compliance with the Stark Law, in connection with a dinner that Mrs. Charley did not attend.

44. Mrs. Charley reported this attempted coercion to Human Resources, Compliance, and HR Legal. Mrs. Charley possesses written documentation for this communication.

**V. EXCLUSION FROM CROSS-FUNCTIONAL CALLS**

45. After Mrs. Charley's termination as Regional Sales Director, she now serves as a P4 Strategic Account Director, and there were notable irregularities in how her strategy calls were not attended by the entire Natera sales team.

46. Adam Hauben ("Hauben"), Area Director of Histology, was informed by Mrs. Charley in writing that Regional Directors and District Managers reporting to MacAlintal were blocking members of his team from joining Mrs. Charley's calls.

47. These concerns were brought to management on multiple occasions, including a Zoom call attended by MacAlintal, Heneks, Johnson, and National Director of Strategic Accounts Scott Pfafman ("Pfafman").

48. MacAlintal was aware of, and encouraged, Regional Director and District Manager personnel in Florida to block members of the Histology sales team from joining Mrs. Charley's strategy calls, undermining Mrs. Charley's ability to perform her job duties.

49. Ryan Palusak ("Palusak") (Regional Director for North Florida) and Dan Sperry ("Sperry") (District Manager for Central Florida), both under MacAlintal, claimed that Mrs. Charley

was stealing company time during a conference in Orlando, a claim that was ultimately unfounded.

50. Palusak further interfered with Mrs. Charley's acquisition of accounts for the University of Florida and Tampa General, resulting in monetary losses that are yet to be resolved.

51. At the May 2026 Plan of Action meeting, Alison Hansen, a Breast Histology sales representative, complained to a large group of colleagues that Regional Directors and District Managers in Florida had instructed her not to join Mrs. Charley's strategy calls. Hansen no longer works with Natera.

## VI. DISPARATE TREATMENT BY ADDITIONAL SUPERVISORY PERSONNEL

52. Pfafman enforced workplace rules against Mrs. Charley that he did not enforce against similarly situated non-Hispanic colleagues, including requiring Mrs. Charley alone to maintain and continuously update a shared events log.

53. Pfafman selected individuals who had never worked with Mrs. Charley to conduct Mrs. Charley's year-end performance review.

54. Pfafman acknowledged to Mrs. Charley that she was being treated differently by Regional Directors and District Managers in Florida in a manner that impeded her work, stating in substance that "this behavior is not happening anywhere else," and confirmed, for example, that Tiffany Heneks had directed Mrs. Charley to stay away from various accounts that were part of her 'targets'.

55. Natera did not reprimand Pfafman for arriving at a work function, hours late and intoxicated, notwithstanding Basher's awareness of the conduct.

## VII. COMPARATOR EVIDENCE


**Stephan Lopez Law Firm, LLC.**
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

56. Heneks, a white American employee substantially younger than Mrs. Charley, was hired as District Manager through the pretextual position described above and promoted to Regional Director in Mrs. Charley's place, notwithstanding her comparatively limited experience and her failure to meet Natera's internal promotion criteria.

57. Heneks was given control of Mrs. Charley's highest-performing territory shortly before Mrs. Charley's demotion and Heneks' promotion, and made discriminatory remarks toward Hispanic colleagues, including Chief of Staff Kristin del Valle.

58. Natera's disparate treatment of Mrs. Charley contrasts with that of Heneks and other non-Hispanic, comparatively younger colleagues, who were permitted the autonomy, professional support, and procedural accommodations.

**COUNT I**

**DISCRIMINATION IN VIOLATION OF EQUAL EMPLOYMENT UNDER TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT.**

59. Mrs. Charley re-alleges and reaffirms paragraphs 8 through 57 above as if fully set forth herein.

60. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race, color, national origin, sex, or religion.

61. At all times relevant hereto, Mrs. Charley was a member of one or more classes protected under Title VII by virtue of her Hispanic ethnicity and Honduran national origin.

62. Mrs. Charley was qualified for the positions she held at Natera, including District Manager and Regional Director, and at all relevant times performed her duties satisfactorily and met Natera's legitimate performance expectations, as alleged above.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

63. Notwithstanding her qualifications and satisfactory performance, Mrs. Charley was subjected to disparate treatment in the terms, conditions, and privileges of her employment, including, without limitation: removal of high-performing territories from her supervision without cause; denial of the decision-making autonomy afforded to similarly situated Regional Directors outside her protected classes; exclusion from recognition and award programs of which she was not even made aware; assignment of year-end reviewers who had never worked with her; obstruction of her ability to perform her duties through the coordinated exclusion of cross-functional support personnel from her strategy calls; and demotion from previous Regional Director position.

64. Employees outside Mrs. Charley's protected classes who were similarly situated to Mrs. Charley in all material respects, including but not limited to Heneks and other Regional Directors and District Managers not of Hispanic ethnicity, were treated more favorably than Mrs. Charley under nearly identical circumstances, were afforded autonomy and support denied to Mrs. Charley, and were not subjected to the same scrutiny, obstruction, or adverse actions.

65. The disparate treatment described herein and in the General Allegations was motivated, in whole or in part, by discriminatory animus toward Mrs. Charley's protected characteristics, as shown by both direct and circumstantial evidence, including the discriminatory remarks of Natera managers and decisionmakers, the fabrication of a position used to displace Mrs. Charley, and the disparate application of Natera's own internal policies and procedures for Mrs. Charley's benefit as compared to her non-Hispanic colleagues.

66. To the extent Natera asserts any legitimate, non-discriminatory reason for the adverse actions taken against Mrs. Charley, any such reason is pretextual and not the true reason for


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

Natera's conduct, as demonstrated by the shifting and inconsistent justifications offered, the departure from Natera's own written procedures, and the temporal and substantive connection between Mrs. Charley's protected characteristics and the adverse actions taken against her.

67. As a direct and proximate result of Natera's discriminatory conduct, Mrs. Charley has suffered and continues to suffer lost wages and benefits, lost future earning capacity, emotional pain and suffering, mental anguish, humiliation, and other compensatory damages.

68. Natera's conduct was undertaken with malice or with reckless indifference to Mrs. Charley's federally protected rights, entitling Mrs. Charley to an award of punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT II
## DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT.

69. Mrs. Charley re-alleges and reaffirms paragraphs 8 through 67 above as if fully set forth herein.

70. Title VII, 42 U.S.C. § 2000e-2(a)(1), separately and specifically prohibits discrimination against an employee because of that employee's national origin.

71. Mrs. Charley is a national of Honduras, and her Honduran national origin was known to, and was the subject of repeated discriminatory remarks by, Natera managers and decisionmakers, including Dustin Greenwell and Amy MacAlintal, as alleged above.

72. Greenwell made repeated remarks specifically tied to Mrs. Charley's Honduran national origin, including directing Mrs. Charley to accept the Miami territory because that is where "her people" were, referencing his Honduran nanny to convey that individuals of Honduran


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

descent would never be promoted into management regardless of education, and making similar remarks during Mrs. Charley's Regional Director interview.

73. MacAlintal made a remark, in the presence of Human Resources personnel and captured on a recorded Zoom call, that she did not "relate" to Mrs. Charley, referencing Mrs. Charley's Honduran background, and thereafter engaged in the pattern of disparate treatment described above.

74. These statements constitute direct evidence of discriminatory animus based on national origin, and, at a minimum, constitute strong circumstantial evidence supporting an inference of discriminatory intent under the burden-shifting framework applicable to Title VII claims.

75. Mrs. Charley's Honduran national origin was a motivating factor in the adverse employment actions taken against her, including but not limited to the creation of a pretextual position to facilitate her replacement by a non-Honduran comparator, her demotion, the removal of her highest-performing territories, the obstruction of her ability to perform her job duties, and her eventual termination.

76. Employees who were not of Honduran national origin, including Heneks, were treated more favorably than Mrs. Charley under nearly identical circumstances and were not subjected to remarks or treatment referencing their national origin as a basis for exclusion from advancement.

77. Any legitimate, non-discriminatory reason offered by Natera for the adverse actions taken against Mrs. Charley is pretextual, given the direct evidence of national-origin-based animus described herein, the departure from Natera's internal procedures for the benefit of a non-Honduran comparator, and the pattern of disparate treatment Mrs. Charley experienced throughout her employment.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

78. As a direct and proximate result of Natera's discrimination against Mrs. Charley on the basis of her national origin, Mrs. Charley has suffered and continues to suffer lost wages and benefits, lost future earning capacity, emotional pain and suffering, mental anguish, humiliation, and other compensatory damages.

79. Natera's conduct was undertaken with malice or with reckless indifference to Mrs. Charley's federally protected rights, entitling Mrs. Charley to an award of punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT III
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 ET SEQ.

80. Mrs. Charley re-alleges and reaffirms paragraphs 8 through 78 above as if fully set forth herein.

81. The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age. The ADEA's protections extend to individuals who are at least forty years of age. 29 U.S.C. § 631(a).

82. At all times relevant hereto, Mrs. Charley was at least forty years of age and was therefore a member of the class protected under the ADEA.

83. Mrs. Charley was qualified for the positions she held at Natera, including District Manager and Regional Director, and at all relevant times performed her duties satisfactorily and met Natera's legitimate performance expectations, as alleged above.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

84. Notwithstanding her qualifications and satisfactory performance, Mrs. Charley was demoted from her Regional Director position, replaced by Heneks, a substantially younger employee, and ultimately terminated from her employment.

85. Heneks, who is approximately thirty-three years of age, is substantially younger than Mrs. Charley and was hired and promoted into positions previously held by, or otherwise in place of, Mrs. Charley, notwithstanding Heneks' comparative lack of experience and her failure to satisfy Natera's own internal tenure and performance prerequisites for promotion.

86. Mrs. Charley was warned directly by then-colleagues Shultz and Piazza-Coffey that she was being targeted for adverse treatment because of her age, in addition to her ethnicity, and that a pretextual position was being created for the purpose of installing a substantially younger replacement, as alleged above.

87. Mrs. Charley's age was a determinative and but-for cause of the adverse employment actions taken against her, including her demotion.

88. Any legitimate, non-discriminatory reason offered by Natera for the adverse actions taken against Mrs. Charley is pretextual and not the true reason for Natera's conduct, as demonstrated by the direct warnings Mrs. Charley received regarding age-based animus, the departure from Natera's own written procedures for the benefit of a substantially younger comparator, and the pattern of disparate treatment Mrs. Charley experienced throughout her employment.

89. Natera's discriminatory conduct as alleged herein was willful within the meaning of 29 U.S.C. § 626(b), entitling Mrs. Charley to liquidated damages in an amount equal to her back pay award.


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

90. As a direct and proximate result of Natera's discriminatory conduct, Mrs. Charley has suffered and continues to suffer lost wages and benefits and lost future earning capacity.

## COUNT IV
## RETALIATION IN VIOLATION OF TITLE VII

91. Mrs. Charley re-alleges and reaffirms paragraphs 8 through 89 above as if fully set forth herein.

92. Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because that employee has opposed any practice made unlawful by Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

93. Mrs. Charley engaged in protected activity by, among other things: complaining to David Basher regarding discriminatory treatment based on her ethnicity and age; repeatedly reporting discriminatory conduct to Lau; and reporting to Human Resources and HR Legal an attempt to coerce her into signing an Attestation Form implicating the Stark Law in connection with a physician valuation adjustment.

94. Natera, through Basher, MacAlintal, and Lau, had actual knowledge of Mrs. Charley's protected activity.

95. Following, and because of, Mrs. Charley's protected activity, Natera subjected Mrs. Charley to materially adverse actions, including continued obstruction of her ability to perform her job duties, denial of support and autonomy afforded to her colleagues, and ultimately, demotion of her employment without any investigation into the complaints she had raised.

96. A causal connection exists between Mrs. Charley's protected activity and the adverse actions taken against her, as demonstrated by the timing proximity between Mrs. Charley's complaints and the adverse actions that followed, Basher's hostile reaction to Mrs. Charley's


**Stephan Lopez Law Firm, LLC**.
14875 NW 77th Avenue Ste 206, Miami Lakes, FL 33014 • P 305-792-8221 • F 754-551-5406
www.crimlegal.com

complaint of unfair treatment, and Natera's failure to conduct any investigation into Mrs. Charley's complaints prior to terminating her employment.

97. Natera's pattern of retaliating against employees who complained of, or corroborated complaints regarding, discriminatory and hostile conduct further evidences a retaliatory motive, including Natera's termination of Chantel Rivera after she complained to Human Resources regarding \Greenwell and Heneks, and the departures of Alison Hansen, Angela Devine, and Emma Woodstock following their respective complaints and reports regarding hostile treatment.

98. Any legitimate, non-retaliatory reason offered by Natera for the adverse actions taken against Mrs. Charley are pretextual and therefore not the true reason for Natera's conduct.

99. As a direct and proximate result of Natera's retaliatory conduct, Mrs. Charley has suffered and continues to suffer lost wages and benefits, lost future earning capacity, emotional pain and suffering, mental anguish, humiliation, and other compensatory damages.

100. Natera's conduct was undertaken with malice or with reckless indifference to Mrs. Charley's federally protected rights, entitling Mrs. Charley to an award of punitive damages pursuant to 42 U.S.C. § 1981a.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1981(a)(C).

**WHEREFORE,** Mrs. Charley respectfully requests the Court declare as follows:

a. That this Court has jurisdiction over the parties and subject matter;

b. Natera engaged in discriminatory actions against Mrs. Charley, as designated under Title VII of the Federal Civil Rights Act;

c. Mrs. Charley is entitled to monetary relief for **Counts I, II, and IV** in the amount to be determined at trial, in relation to (a) back pay and lost benefits; (b) front pay or reinstatement; (c) compensatory damages for emotional pain, suffering, and mental anguish; (d) punitive damages; and (e) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

d. Mrs. Charley is entitled to monetary relief for **Count III** in the amount to be determined at trial, in relation to (a) back pay and lost benefits; (b) front pay or reinstatement; (c) liquidated damages pursuant to 29 U.S.C. § 626(b); and (d) reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 626(b);

e. Such other relief as this Court deems just and proper.

Dated: July 21, 2026

Respectfully Submitted by:

**Stephan Lopez Law Firm, LLC**
*Counsel for Plaintiff*
14875 NW 77th Avenue, Ste 206
Miami Lakes, FL 33014
Phone: (305) 792-8221
Fax: (754) 551-5400
E-Mail: stephan@stephanlopezlawfirm.com

By:/S/ Stephan Lopez, Esq.
Florida Bar No. 76959

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 21, 2026, the foregoing Complaint was filed with the Clerk of the Court for the Southern District of Florida via CM/ECF. I also certify that the foregoing document will be served by personal service or by some other authorized manner.

By: /s/Stephan Lopez
**STEPHAN LOPEZ, ESQ.** FBN: 76959

EX A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/23/2026

**To:** Mrs. Patricia Charley
940 NW 197th Ave.
Pembroke Pines, FL 33029
Charge No: 510-2026-03852

EEOC Representative and email: WIGBERTO PEREZ PEREZ
INVESTIGATOR
WIGBERTO.PEREZPEREZ@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge. The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of the EEOC's official notice of dismissal. Otherwise, your right to sue based on the above-numbered charge will be lost.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2026-03852.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
04/23/2026

Evangeline Hawthorne
Director

**Cc:**
Natera, Inc.
940 NW 197th Ave.
HOLLYWOOD, FL 33029

Shelby Craven
13011 McCallen Pass, Building A, Suite 100
Austin, TX 78753

Stephanie Lopez
14875 NW 77th Suite 206
Miami Lakes, FL 33014

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 510-2026-03852 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 510-2026-03852 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.